**PETERS et al. v. BROOKSHIRE.**

No. 14592.

Court of Civil Appeals of Texas.
Fort Worth.

March 3, 1944.

Rehearing Denied March 31, 1944.

Allen & Gambill, of Fort Worth, for appellants.

Rufus S. Garrett, of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellant Mrs. Peters, as plaintiff in the court below, sued appellee Jeff J. Brookshire for a partnership accounting and for a partition of partnership properties consisting of certain real estate in the City of Fort Worth.

In the year 1922, appellee Jeff J. Brookshire and his brother S. N. Brookshire entered into a partnership for the purpose of owning and developing certain real estate. The brothers were each at that time, and each thereafter continued to be, engaged in business transactions other than those of the partnership. From 1922 until 1932 S. N. Brookshire made most, if not all, of the collections and disbursements of the partnership funds, and kept the books. After 1932, appellee Jeff J. Brookshire took over these duties. In 1934, S. N. Brookshire transferred his interest in the partnership to his wife Lydia Brookshire. In 1937, Lydia Brookshire died, leaving such interest by will to appellant Mrs. Peters.

The underlying theory of Mrs. Peters' suit is that during the years 1922 to 1932, when her father S. N. Brookshire handled the money and kept the books, he expended a large amount of money on behalf of the partnership which he did not enter upon the partnership books that he kept. Her petition lists some eight hundred checks given by her father S. N. Brookshire, which she claims were partnership disbursements, and which are not shown in the books kept by her father. She alleges that there has never been a general accounting.

Of the 800 checks, approximately, described in the petition, all but 173 were eliminated from consideration of the jury presumably on the ground that the undisputed evidence showed that they were not given for partnership purposes. A list of 173 of the checks was submitted to the jury in connection with issues that required the jury to find which, if any of them, were given for partnership purposes. The jury found that none of them was given for partnership purposes. The judgment rendered is therefore adverse to appellant's contentions.

The first point of error complains of the refusal of the trial court to submit to the jury a specially requested issue inquiring whether certain checks which S. N. Brookshire had given to a niece named Bertha Brookshire were to be considered as partnership disbursements and charged against the partnership account. These were not among the 173 checks above mentioned. It appears from the evidence that Bertha Brookshire had been injured in an accident, and that S. N. Brookshire and Jeff J. Brookshire agreed that the former should make gifts of money to her, and that the latter would reimburse him for half of such expenditures. Jeff J. Brookshire testified that he had made such agreement, but that he had paid to his brother the half agreed upon. Appellant testified that she had heard her father and uncle refer to the payments made to Bertha Brookshire as a partnership matter. There is, we believe, a complete lack of any evidence to show that the payments made to Bertha Brookshire were any part of the partnership business which the two brothers carried on in the handling of the real estate involved in this suit. The partnership books contained no reference to such payments, and there is nothing in the testimony tending to support appellant's contentions other than a vague reference or two in her own testimony to the effect that the checks given to Bertha Brookshire were "to be considered partnership". Although the list of checks attached to appellant's petition included the checks given to Bertha Brookshire, the partnership described in the petition is a business partnership entered into for the purpose of owning and developing certain real estate. There is simply no evidence that the payments to her were treated by the partners as a matter of partnership business.

The second and third points are related, and have reference to the fact that Mr. U. M. Simon, attorney for Mrs. Peters, was referred to by appellee's attorney as a Jew. Three or four days before the end of the trial, just before the noon recess, appellee's attorney called Mr. Simon to the witness stand. While Mr. Simon was still on the stand the judge announced the noon recess, left the bench, and entered his office. Appellee's counsel, Mr. Rufus Garrett, and Mr. Simon engaged in an exchange of remarks which was overheard by some of the jury, in the course of which Mr. Garrett referred to Mr. Simon as a "lying Jew". Mr. Simon answered that he was a Jew. The two attorneys began a physical encounter, but were separated by those in the courtroom. The matter was not called to

the attention of the trial court at the time, nor was any exception taken by appellant. Complaint of the matter was made for the first time in the motion for new trial.

■ The second point of error charges that Mr. Garrett's acts amounted to misconduct warranting a reversal in that it injected religious and racial prejudice into the case. We do not consider that the case should be reversed merely because the jury learned that one of the attorneys was a Jew. A jury might observe from a lawyer's appearance that he was a negro, or a member of some other race, or might conclude from his name that he was of German, or of Irish, or some other racial extraction, yet we would not presume prejudicial error from that fact alone. The cases cited to us have been those where an attorney in his argument to the jury sought to raise a prejudice against a party or litigant because of his racial extraction. Each of the attorneys in the case before us called the other a liar. Their remarks appear to have been addressed to each other, and were made during a recess of court. If either of them felt that his client's rights had been prejudiced, it seems to us that he should have brought the matter to the attention of the trial court instead of proceeding with the trial without making any mention of the matter.

■ The third point of error charges jury misconduct, in that one or more of the members of the jury stated in substance that the decision should go against the plaintiff because she was represented in the case by a lawyer who was a Jew. The trial court having overruled the motion for new trial without making any specific findings therein, we must imply such findings in support of his ruling as the testimony will warrant. Seven of the jurors testified on the hearing of the motion for new trial. Most favorable to appellant was the juror Armstrong, who said that statements were made in the jury room to the effect that appellant's case should not be considered if her lawyer was a Jew. Armstrong admitted on cross-examination that he was the juror who made such statements, and none of the other jurors testifying said that they heard any such statements made, and several testified that no such statements were made in the jury room. Armstrong said in effect that he was prejudiced against Mr. Simon because he was a Jew, but also said that he was not prejudiced against Mrs.

Peters because of that fact. He could not, of course, impeach his verdict by testifying to his mental processes employed in reaching the verdict. Without discussing it in detail, his testimony is so vague and uncertain, and so unsatisfactory in other respects, that we do not believe that the trial judge was required to accept it as controlling. Another juror testified that after the verdict had been returned into court, and read to them by the judge, one of the jurors said, "I wonder how that damned Jew likes that verdict". He was unable to say which juror made such a statement, and the other five jurors said that they heard no such statement made, although they were all standing near each other in the court room at the time. There was such a conflict, we think, as would have warranted a finding that the statement was not made, and, in the second place, if made at all it was after the verdict had been reached and returned into open court. We overrule the second and third points of error.

■ Under the fourth point of error it is contended that one or more members of the jury discussed the effect of their verdict on the judgment, and under the fifth point that the jury did not give any consideration to the 173 checks inquired about in the third issue, but answered the issue in the negative in order that a quick verdict might be reached so the jurors could go home. The trial of the case lasted about two weeks. The battle was fought out on the general question of whether the books kept by S. N. Brookshire showed all of the partnership expenditures, or whether he had given some eight hundred checks for partnership expenses which he had not entered in the partnership books. The judge eliminated some six hundred of the checks, and the jury found that the remaining 173 did not pertain to the partnership business. If they accepted appellee's general theory that S. N. Brookshire noted the partnership expenditures in the partnership books, and there was ample testimony to support such theory, they were justified in concluding that they need not examine each of the 173 checks. The gist of the testimony of most of the jurors who testified on the motion for new trial was that they had been hearing the controversy for two weeks and considered that they already knew whether any of the 173 checks were given for partnership expenses. We consider that the testimony taken on the mo-

tion for new trial supports the order of the trial court overruling the motion.

■ The sixth point of error questions the sufficiency of the evidence to support the verdict. To discuss the evidence in detail would require an opinion of great length. It seems to us that the verdict is supported by the books kept by appellant's father when he was keeping the books and handling the money. S. N. Brookshire died before the trial, but his deposition was taken before his death. While it is apparent to us that his recollection was poor, doubtless because of his advanced age and serious illness, it seems to us that his testimony tends to support the appellee's case rather than the contentions made by appellant.

■■ The seventh, eighth and ninth points, as well as an objection raised by appellee at the outset of his brief, present related questions.

After the suit was filed a plea of intervention was filed by F. L. Hicks, in which he alleged that he held a valid lien on certain of the property involved, and represented that he was equitably entitled to have the rents being collected by the receiver applied on overdue interest. No other relief was sought in the plea of intervention. Upon request of the intervener, the court permitted him to withdraw his intervention some time prior to the trial of the case. The judgment being appealed from recites that there is pending in the same court a suit filed by Hicks against "J. J. Brookshire et al", to recover judgment on a note alleged to be due by the partnership for approximately $17,800.00 and for foreclosure of lien on "partnership property involved in this suit". The judgment also recites that "there is no evidence that there is any other indebtedness due by this partnership". Among other things, the judgment provides that the receiver shall sell the described partnership real estate, either separately or in groups, to the highest and best bidder at private sale for cash, subject to the approval of the court, and that the proceeds be applied, first, to the payment of costs, including the receiver's fee and other expenses of receivership, second, "to the satisfaction of such indebtedness as may be adjudged to be due by the partnership to F. L. Hicks in said Cause No. 31,561-A, F. L. Hicks vs. J. J. Brookshire, et al.", third, to the payment of a note held by appellee against the partnership, about which there appears to be no

dispute, and fourth, that the balance remaining be paid equally to plaintiff and defendant.

Appellee contends that the judgment is not final, but is merely an interlocutory order, and not appealable. We overrule this contention under authority of Hargrove vs. Insurance Inv. Corp., Tex.Sup., 176 S. W.2d 744. Appellant says that the judgment is fatally defective in that Hicks was not a party to the suit. It is to be remembered that appellant brought the suit. She asked for an accounting, and for a partition of partnership property. She must have known of the Hicks claim, and must have known that the partnership property could not be divided until the Hicks claim was either satisfied or defeated. The judgment does not purport to adjudicate the Hicks claim. It merely provides a method by which the partnership property can be partitioned, with final division to be made after disposition of the Hicks claim. If the receiver cannot sell the property because of the Hicks claim, or cannot work out an arrangement whereby Hicks will execute releases in order that the property can be sold, he can report such matter to the court, and the court can in turn take such steps as may be necessary to bring about finally a sale of the properties in such manner as will protect the interests of all concerned. If no other method can be worked out by the receiver and the court, sale of the properties may have to be postponed until final determination of the Hicks claim. But that will not affect the adjudication which has been made as to the rights of appellant and appellee inter sese. Any rights they may have as partners are and must remain subject to the prior rights of creditors of the partnership.

The judgment finds that appellee has received $6,887.92 less than appellant has received from the partnership funds, and orders that this amount be paid to appellee by the receiver from cash in the hands of the receiver, obviously for the purpose of equalizing the interests of the partners in the real estate and the proceeds of sales thereof. Appellant under her tenth point urges that the pleadings, evidence and findings in the judgment do not support this award to appellee. As for the pleadings, it appears to us that no pleadings were required on the part of appellee to support this portion of the judgment. Appellant sought an accounting in her pleadings and

878

the court has rendered judgment accordingly. As for the evidence and the findings in the judgment, it appears to us that the judgment rendered will bring about an equal distribution of the partnership funds after taking into account what each partner has heretofore received, and after taking into account the $4,000 loan made by appellee to the partnership.

Finding no error, we affirm the judgment.

BROWN, J., not sitting.